(No. 14587.—Judgment affirmed.)

C. E. HEAPS, Plaintiff in Error, vs. THE INDUSTRIAL COM-
MISSION et al.—(W. F. BETOW, Defendant in Error.)

*Opinion filed June 21, 1922.*

1. WORKMEN'S COMPENSATION—*when evidence is sufficient to
sustain award for total loss of sight.*  Where an employee who
has lost the sight of one eye suffers an injury to the other which
causes him to be entirely blind except when he uses artificial means
to keep the eye-lid open, and the evidence shows that with his eye
open his sight is so imperfect that he cannot follow his employ-
ment and that the condition is morally certain to grow worse, an
award for total loss of sight is justified.

2. SAME—*meaning of "permanent loss" of use of member, as
used in Compensation act.*  "Permanent loss" of the use of a mem-
ber, as the term is used in the Compensation act, means the tak-
ing away of the normal use of the member; and the ability to do
some work by aid of a mechanical device is not inconsistent with
complete loss of the use of an eye or a hand.

3. SAME—*total permanent disability may include previous loss
of member.*  Where an employee who previous to his employment
has lost an eye suffers an injury which results in the loss of the
other eye he is entitled to compensation for total permanent dis-
ability.

WRIT OF ERROR to the Circuit Court of Lee county; the
Hon. HARRY EDWARDS, Judge, presiding.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for
plaintiff in error.

H. A. BROOKS, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On July 2, 1920, W. F. Betow, defendant in error, filed
his claim with the Industrial Commission against C. E.
Heaps, plaintiff in error, for compensation for injuries
sustained while in the employ of plaintiff in error.  On a
hearing before the arbitrator he was awarded compensation.
Upon review before the Industrial Commission additional

evidence was presented, and the commission awarded the sum of $13 per week for 140 weeks, $12 per week for 160 weeks and $10 for five-sixths of a week, and thereafter a life pension of $25 per month. On writ of *certiorari* the circuit court of Lee county confirmed the award of the Industrial Commission, and a writ of error was allowed by this court to review the judgment.

On May 15, 1920, while engaged in driving a steel scraper for plaintiff in error, a road builder, Betow's team became frightened at a tractor engine used in the work and threw him head first into the scraper and very seriously injured his face and right eye. The right eye was cut on the inner corner, next to the nose. The cut was from the inner canthus of the eye between a line drawn from the outer edge of the eye down to about half an inch below the lid. In addition to the cut the eye was considerably bruised and swollen shut and remained congested and inflamed for several days. After the injuries the muscles of the right eye-lid became paralyzed and the eye could not be opened by Betow except by artificial means. This condition is permanent, it being the judgment of physicians who testified, that the eye-lid would always remain paralyzed and the eye closed except when held open by plasters or other artificial means. The undisputed evidence offered on behalf of the defendant in error is, that before the injury he could see well with the eye and could read without glasses, but that after the accident he could only see by propping the eye-lid open and then very little, and after it was propped open objects to him took on a white cast. His sight out of that eye grew continually worse, and at the time of the trial he could not distinguish a man ten or fifteen feet away. He could not distinguish his neighbors at a distance of fifteen feet from him, and by removing the plasters which held the lid open he was totally blind. He had been blind in his left eye for about five years before the accident. After his injury he returned to his work and drove for a

while in the work he was doing when injured, by having his eye held open by plasters and by having stakes set for him to drive by, but his eye continued to have less and less sight until he was finally compelled to quit the job and take his boy out of school to drive for him.

Dr. Parker, who treated Betow immediately after his injury, testified that in addition to laceration of the eye there was considerable trauma, or, as he called it, congestion, caused by blood entering into the soft tissues, due to the blow. He stated that the eye was black above and below and the eye-ball was congested and inflamed from a direct blow to it, and that it was over a week before he could get the eye open, and after a week or more the eye was still inflamed but gradually cleared up, and that after it cleared up he discovered a cataract of the eye, but was unable to say whether it was of recent origin or of long standing.

Dr. Willard Thompson, an eye specialist, testified that the paralysis of the upper lid was caused by trauma and that there is no power to open and close the lid, and the loss of vision to Betow when his eye is propped open was attributable to cataract and not to traumatic conditions. He gave it as his judgment that the cataractous condition partially existed before the eye was hurt, but stated that the trauma would hurry or hasten a cataractous condition.

Dr. Thomas O. Edgar, another eye specialist, testified that Betow was blind in the left eye and that the upper eye-lid of his right eye was paralyzed, so that it prevented his opening it; also that there was a cataract in the eye and that the eye showed results of inflammation. It was his judgment that the paralyzed condition of the lid was permanent and that he would not be able to see out of it without lifting his eye-lid, and that he only had 12/200ths of vision when the eye-lid was raised. He further testified that the cataract in the left eye is not of the same character as the cataract in the injured eye. He gave it as his

judgment that the cataract in the injured eye is the result of trauma, because it is in little streaks in the front of the lens, and that it might get worse but that he would not expect it to improve. He further stated that the cataract in the left eye appears to be a cataract of the ordinary type, but that it might have been due to an injury. Assuming that the cataract in the left eye was produced by an injury he gave it as his opinion that an operation would not relieve it, but that if it was of the ordinary type an operation might give increased vision.

Defendant in error testified that his left eye was injured or put out by a cinder striking the eye-ball while he was firing a boiler, and that he had been blind in that eye for five years.

The evidence shows conclusively that defendant in error by the injury to his right eye was reduced to total blindness except when his eye was propped open or kept open by plasters or other artificial means. It further shows that he is practically blind and unable to see to do his work when his eye is kept open, and that keeping it open is very injurious to it because not protected from dust and other flying particles by tears and other natural processes. There is no hope of improvement, and very little, if any, of his ever again seeing out of the left eye, even if operated on for cataract, and there is every prospect that his right eye will continue to grow worse and give him less vision.

It is not questioned by plaintiff in error that defendant in error is entitled to compensation for his injury. One of the real contentions of plaintiff in error is that Betow has not sustained complete loss of use or vision of his eye, and that it was error to award compensation for total disability. All the facts necessary to the recovery of compensation in this case were stipulated, except the facts as to the injury. We think that the evidence sustains the claim of defendant in error that he has sustained the loss of both eyes or the permanent and complete loss of use thereof,

within the meaning of the Compensation act. It is not necessary, to sustain the award in this case, to show total and complete loss of sight under all circumstances. He is entirely blind at all times, as already stated, except when he uses artificial means to keep his eye open. When this is done he only has 12/200ths vision, which amounts practically to blindness, and that condition is morally certain to grow worse. When he returned to work he could for a time follow the stakes and drive his team in doing his work of road building, but his eye finally got so bad that he could not see to drive properly and was discharged for that reason.

"Permanent loss," as used in the Compensation act concerning the loss of an eye, limb, etc., means the taking away of the normal use of the member. The loss of a member is complete when the normal use of the member has been taken away. Ability to do some work by aid of a mechanical device is not inconsistent with complete loss of the use of an eye or a hand. (*Mark Manf. Co.* v. *Industrial Com.* 286 Ill. 620; *Juergens Bros. Co.* v. *Industrial Com.* 290 id. 420.) It is now a well established rule in this State and other States, that where an employee who previous to his employment has lost an eye loses the other eye as the result of an injury, or who has lost an arm and loses a leg as the result of an injury arising out of and in the course of his employment, he is entitled to compensation for total permanent disability. (*Wabash Railway Co.* v. *Industrial Com.* 286 Ill. 194; *In re Branconnier,* 223 Mass. 273; *Brooks* v. *Peerless Oil Co.* 146 La. 383.) The reason for this rule is, that by the destruction of the one remaining eye the employee loses all the capacity to see that he had, and an injury causing such a loss of the remaining eye necessarily causes total disability to see.

As to the contention of the plaintiff in error that the loss of Betow's right eye was not the result of the injury, but was the result, in whole or in part, of a cataract which

was growing in his eye at the time of the injury, our finding is against that contention, as already stated. We think that the Industrial Commission was warranted in finding that blindness was the result of the injury and not of any cataract growing at the time of the injury.

The judgment of the circuit court is therefore affirmed.

*Judgment affirmed.*